UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:20-cv-653

| | |
|---|---|
| JML ENERGY RESOURCES, LLC., <br><br>  Plaintiff, <br><br> vs. <br><br> RYDER TRUCK RENTAL, INC. d/b/a <br> RYDER TRANSPORTATION SERVICES, <br><br>  Defendant. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

NOW COMES THE PLAINTIFF, COMPLAINING OF THE DEFENDANT AS FOLLOWS:

1. That the Plaintiff is a Tennessee corporation with a branch office located in Mecklenburg County, North Carolina.

2. That upon information and belief, the Defendant Ryder Truck Rental, Inc., ("Ryder") is a Florida corporation which also does business as Ryder Transportation Services, with a branch office located in Mecklenburg County, North Carolina. Ryder's business operations include, but are not limited to, the leasing and sale of tractors and trailers to its customers who in turn utilize such equipment to haul product/freight from one location to another.

3. Ryder frequently market products, and enters into contracts to supply goods and services in various states including in the State of North Carolina. Ryder's business activities in, and contacts with, the State of North Carolina are so continuous and substantial so as to subject Ryder to the general jurisdiction of the State of North Carolina.

4. Ryder and JML were parties to a series of Truck Lease and Service Agreements ("TLSA"), the earliest of which begin December 12, 2018, a series of Vehicle Operating and Service Agreements ("VOSA") and a series of vehicle leases identified by separate Schedule A agreements, which included price, description, make year, VIN numbers, and terms of the lease (the "Schedules") (together "Agreements"). See Exhibit A.

5. All TLSAs, VOSAs, and Schedule As were executed in person by representatives of both Ryder and JML, in Mecklenburg County, North Carolina.

6. Jurisdiction is conferred up to this Court pursuant to 28 U.S.C. § 1332, this case arising under the laws of the United States, 28 U.S.C. § 1337, this action arising under acts of Congress regulating commerce, and 28 U.S.C. § 1367.

7. Venue is proper in the United State Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391(b) and (c).

8. The amount in controversy exceeds $75,000.00.

## FACTS COMMON TO ALL COUNTS

9. At all times relevant, the Agreements between Plaintiff and Defendant provided for the lease and service of Defendant's vehicles so that Plaintiff could distribute and deliver various goods.

10. Ryder markets and maintains tractors and trailers for use by and sale to independent contractors throughout Mecklenburg County, North Carolina.

11. Ryder is a "merchant" and "seller" of "goods" within the meaning of the Article 2 of the Uniform Commercial Code (hereinafter "U.C.C") as it has been adopted in various germane states, including North Carolina in N.C. Gen. Stat. §§ 25-2-101 et seq.

12. The Agreements were mixed contracts with their predominant factor being a transaction for sale/lease, with services incidentally involved as defined by the *Bonebrake* test adopted in North Carolina by *Hensley v. Ray's Motor Co. of Forest City, Inc*., 158 N.C. App. 261, 265, 580 S.E.2d 721, 724 (2003).

13. The Units included:

    a. Tractors numbers 245097; 245221; 274209; 274210; 274211; 274212; 278439; 278440; 248661; 248662; and

    b. Trailers numbers 268671; 268672; 268673; 268674; 268675; 268676; 273370; 273371; 273372; 273373; 274545; 274546; 274547; 358951; 358952; 358953; 358955; 788846. (collectively the "Vehicles").

14. In connection with these Agreements, Ryder agreed in the VOSA to, among other things, "provide at its sole cost: (1) lubricants, tires, tubes, and all other operating supplies necessary for the Units; [and] (2) Maintenance and repairs including all labor and parts required to keep the Units in good operating condition." See Exhibit A, Section 3A.

15. At all times relevant, Ryder warranted in the VOSA that "except for ordinary wear and tear, (1) the Vehicle will be roadworthy and in good and operable condition, (2) the Vehicle will comply with Federal Annual Safety Inspection and all state inspection requirements in those states in which the Vehicle is operated, (3) all components, including but not limited to, all engines, transmission and power trains will be roadworthy and in operable condition, (4) the Vehicle will have an average of at least 50% tire tread depth, and no tire

2

will have less than 35% tread depth, with no recapped tires on the steering axle, and (5) the Vehicle will have no significant sheet metal damages. . ." See <u>Exhibit A</u>, Section 3D.

16. In conjunction with these clauses, Plaintiff purchased and pre-paid Ryder for virgin tires and was charged an average of $.70/mile for maintenance and tire replacements.

17. JML began experiencing problems with the maintenance from the date maintenance first became necessary.

18. JML regularly notified Ryder of the Vehicles' lack of roadworthiness. Although Ryder occasionally responded to the service requests, the problems with the Vehicles persisted in the following ways:

   a. On 8/19/20, JML took Unit #245097 to be serviced/replace tires/etc. and Ryder returned the vehicle with no service or tires.

   b. From 5/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit #245097.

   c. On 8/26/20, JML took Unit # 245221 to be serviced/replace tires/etc. and Ryder returned the vehicle with no service or tires.

   d. From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 245221.

   e. On 8/26/20, JML took Unit # 245221 to be serviced/replace tires/etc. and Ryder returned the vehicle with no service or tires.

   f. From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 245221.

   g. On 5/23/20, JML took Unit # 274209 to be serviced/replace tires/etc. and Ryder returned the vehicle with no new tires.

   h. From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 274209.

   i. On 8/20/20, JML took Unit # 274210 to be serviced/replace tires/etc. and Ryder returned the vehicle with tires that did not conform to the agreed upon tread depth.

   j. From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 274210.

   k. On 8/20/20, JML took Unit # 274211 to be serviced/replace tires/etc. and Ryder returned the vehicle with tires that did not conform to the agreed upon tread depth.

l.  From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 274211.

m.  On 8/20, JML took Unit # 274212 to be serviced/replace tires/etc. and Ryder returned the vehicle with tires that did not conform to the agreed upon tread depth.

n.  From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 274212.

o.  On 8/20/20, JML took Unit # 278439 to be serviced/replace tires/etc. and Ryder returned the vehicle with no new tires.

p.  From 10/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 278439.

q.  On 8/11/20, JML took Unit # 278440 to be serviced/replace tires/etc. and Ryder returned the vehicle with no service or tires.

r.  From 10/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 278440.

s.  From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 268671.

t.  From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 268672.

u.  From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 268673.

v.  From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 268674.

w.  From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 268675.

x.  From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 268676.

y.  From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 273370.

z.  On 9/16/20, JML took Unit # 273371 to be serviced/replace tires/etc. and Ryder returned the vehicle with a recap tire in violation of the contract.

aa. From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 273371.

bb. From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 273372.

cc. On 7/7/20, JML took Unit # 273373 to be serviced/replace tires/etc. and Ryder returned the vehicle with a recap tire in violation of the contract.

dd. From 11/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 273373.

ee. On 7/31/20 – 8/30/2020, JML took Unit # 274545 to be serviced/replace tires/etc. and Ryder returned the vehicle with 4 illegal tires in violation of the contract.

ff. From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 274545.

gg. On 7/7/20, JML took Unit # 274546 to be serviced/replace tires/etc. and Ryder returned the vehicle with 1 illegal tire in violation of the contract.

hh. On 4/14/20, JML took Unit # 274546 to be serviced/replace tires/etc. and Ryder returned the vehicle with 5 illegal tires in violation of the contract.

ii. On 4/24/20, JML took Unit # 274546 to be serviced/replace tires/etc. and Ryder returned the vehicle with 4 illegal tires in violation of the contract.

jj. On 4/25/20, JML took Unit # 274546 to be serviced/replace tires/etc. and Ryder returned the vehicle with 3 illegal tires in violation of the contract.

kk. On 6/5/20, JML took Unit # 274546 to be serviced/replace tires/etc. and Ryder returned the vehicle with 2 illegal tires in violation of the contract.

ll. From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 274546.

mm. From 6/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 274547.

nn. On 3/10/20, JML took Unit # 358951 to be serviced/replace tires/etc. and Ryder returned the vehicle with a recap tire in violation of the contract.

oo. From 12/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 358951.

pp.      On 4/6/20, JML took Unit # 358952 to be serviced/replace tires/etc. and Ryder returned the vehicle with a recap tire in violation of the contract.

qq.      From 12/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 358952.

rr.      On 3/5/20, JML took Unit # 358953 to be serviced/replace tires/etc. and Ryder returned the vehicle with a recap tire in violation of the contract.

ss.      From 12/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 358953.

tt.      On 6/28/20, JML took Unit # 358955 to be serviced/replace tires/etc. and Ryder returned the vehicle with a recap tire in violation of the contract.

uu.      From 12/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 358955.

vv.      On 7/13/20, JML took Unit # 788846 to be serviced/replace tires/etc. and Ryder returned the vehicle with a recap tire in violation of the contract.

ww.      From 12/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 788846.

xx.      From 9/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 248661.

yy.      From 9/2019 to 9/2020, Ryder failed to perform an 8-hour inspection at its shop or perform maintenance on Unit # 248662.

zz.      On 8/26/20, Unit 245221 was allegedly serviced by Ryder. Ryder failed to replace the tires and returned the vehicle with 2 illegal tires. Additionally, Ryder represented that the oil was changed in this Vehicle. An oil sample performed on 9/13/20 showed no oil was changed.

aaa.      Unit 24521 required an adjustment at 100,000 miles in order to operate in the State of Michigan. At the time of termination, this Vehicle was operating at 166,313 miles with no adjustment.

bbb.      Unit 274545 broke down on July 30, 2020. Ryder was called to repair and service the Vehicle which Ryder represented it did. 5 hours later the vehicle broke down again. A full inspection was performed and it was discovered that Ryder sent the unit out with no oil and wiring that had been fixed with an extension cord.

19. At all times relevant, Defendant maintained a pattern and practice of failing to (1) replace tires on the Vehicles; (2) perform scheduled maintenance; and to properly inspect the Vehicles.

20. In or around 2018 to the present, and as a result of continual problems and failures with the Vehicles, JML was forced to effect cover as defined under UCC § 2-712, replace the Vehicles' tires with roadworthy tires, and has paid a total of $29,564.00 to third parties for replacement tires.

21. On or about September 4, 2020, JML through its attorneys, sent a letter to Ryder detailing the defects to Vehicles, rejecting the non-conforming goods, or, alternatively, revoking its acceptance. See Exhibit B.

22. Despite JML's demand that Ryder cure the defects to the Vehicles, it failed to do so in a commercially reasonable time.

## COUNT I
(Fraud)

23. The above numbered paragraphs are hereby incorporated by reference.

24. Prior to December 12, 2018, Joshua Streblow, an employee and agent of Ryder, induced the Plaintiff to enter into contracts with Ryder, by falsely representing certain material facts such as:

    a. Services in Ryder's leases included normal tire replacement;
    b. Services in Ryder's leases included preventative maintenance inspections; and
    c. Services in Ryder's leases included annual safety meetings.

25. These representations were material inducements to Plaintiff, and did in fact lead to Plaintiff signing contracts with the Defendant.

26. At the time of these representations, Ryder knew or should have known that the services described in Paragraph 24 (a) – (c) were not going to be performed by Ryder, and that it was never Ryder's intent to abide by those service standards.

27. By indicating that Plaintiff would not be responsible for replacement tires on the Vehicles, Defendant made a false representation of fact to Plaintiff that Plaintiff relied upon to its detriment.

28. In addition, Ryder made the following false representations and/or acts, which it knew or should have known were false, and which the Plaintiff relied upon to its detriment:

    (a) By representing the oil had been changed on Unit 245221 when in fact it had not;

    (b) By representing that Unit 274545 had been repaired, when in fact it had not,

7

   (c) By representing that the Vehicles would have an average of at least 50% tire tread depth, and no tire will have less than 35% tread depth, yet the Defendant consistently and purposefully chose not to replace the tires with less than 35% tread depth;

   (d) By intentionally and purposefully charging the Plaintiff for the Vehicles after the Plaintiff had returned the Vehicles to Plaintiff;

   (e) For the ways described in the preceding paragraphs, and that may be proven through the discovery of this matter.

29. Upon information and belief, Defendant maintains a pattern and practice of informing its customer that they will not be liable for the costs associated with servicing Vehicles and that the Vehicles would be roadworthy when in fact, the Vehicles could only remain roadworthy if customers, like Plaintiff, pay out of pocket for third party servicing.

30. The foregoing misrepresentations were material and Plaintiff justifiably relied upon the affirmative, willful, misrepresentations made by Ryder to its detriment.

31. As a result of the Defendant's fraudulent conduct, the Plaintiff has suffered damages in excess of $75,000.00.

## COUNT II
(Breach of Contract)

32. The above numbered paragraphs are hereby incorporated by reference.

33. JML entered into the Agreements based on Ryder's representations about service of the Vehicles.

34. JML complied with its contractual obligations under the contract and, at all material times herein, has made payments as required under the terms of the Agreements, up until the date Plaintiff terminated the contract.

35. Ryder's failure to service the Vehicles as agreed rendered the Vehicles defective and failed to conform to the terms of the contract, and/or failed to meet the NCDOT requirements for safe vehicles.

36. The Vehicles were timely rejected by JML.

37. Alternatively, to the extent that it is determined that JML accepted the vehicles, the non-conformity of the vehicles would have been difficult to discover before acceptance, or alternatively, JML's acceptance was induced by Ryder's assurances that they would timely cure the non-conforming goods.

38. Ryder breached the Agreements by failing to deliver goods to JML that conformed to the terms of the contract.

39. Ryder breached the Agreements by failing to perform service and maintenance, as more detailed above.

40. The non-conformity of the Vehicles impaired its vale to JML. JML timely notified Ryder that it was revoking its acceptance.

41. As a result of Defendant's breach, Plaintiff is entitled to recover damages in excess of $75,000.00 including but not limited to the cost of cover (UCC § 2-712), JML's losses as a result of Ryder's breach (UCC § 2-714), any incidental and consequential damages (UCC § 2-715), interest, costs and such other relief as justice and its cause requires.

## COUNT III
(Breach of Express Warranty)

42. The above numbered paragraphs are hereby incorporated by reference.

43. Ryder issued, among other things an express warranty (the "Express Warranty") to JML that: "Ryder warrants that except for ordinary wear and tear, (1) the Vehicles will be roadworthy and in good and operable condition, (2) the Vehicle will comply with Federal Annual Safety Inspection and all state inspection requirements in those states in which the Vehicle is operated, (3) all components, including but not limited to, all engines, transmission and power trains will be roadworthy and in operable condition, (4) the Vehicle will have an average of at least 50% tire tread depth, and no tire will have less than 35% tread depth, with no recapped tires on the steering axle, and (5) the Vehicle will have no significant sheet metal damages. . ."

44. The Vehicles were not roadworthy or in good and operable condition, nor were the components roadworthy and in operable condition, nor were the tire depths maintained at the appropriate level.

45. The Vehicles lack of roadworthiness, the components lack of roadworthiness, and the illegal tire depths were not a result of ordinary wear and tear but instead a result of Ryder's breach.

46. Ryder failed to cure the defects to the Vehicles within a commercially reasonable time.

47. Ryder breached its Express Warranty to JML and as a result, JML has suffered damages.

48. At all relevant times, JML's damages were foreseeable and should have been known by Ryder.

49. As a result of Defendant's breach, Plaintiff is entitled to recover damages in excess of $75,000.00 including but not limited to the cost of cover (UCC § 2-712), JML's losses as a result of Ryder's breach (UCC § 2-714), any incidental and consequential damages (UCC § 2-715), interest, costs and such other relief as justice and its cause requires.

## COUNT IV
### (Breach of Implied Warranty)

50. The above numbered paragraphs are hereby incorporated by reference.

51. At the time of the sale and delivery of the Vehicles, Ryder impliedly warranted to JML that the Vehicles were merchantable and fit for the particular purpose for which the Vehicles were intended and which JML had communicated to Ryder.

52. The Vehicles were not merchantable and fit for the purpose because the Vehicles were not roadworthy, the tire tread was illegal, and many units were not maintained in accordance with state regulations and requirements.

53. JML notified Ryder within a reasonable time after discovering the breach and prior to filing this Complaint.

54. As a result, Ryder breached its implied warranties of merchantability and fitness for a particular purpose to JML which directly and proximately caused JML to suffer damages, which damages were foreseeable.

55. As a result of Defendant's breach, Plaintiff is entitled to recover damages in excess of $75,000.00 including but not limited to the cost of cover (UCC § 2-712), JML's losses as a result of Ryder's breach (UCC § 2-714), any incidental and consequential damages (UCC § 2-715), interest, costs and such other relief as justice and its cause requires.

## COUNT V
### (Unfair and Deceptive Trade Practices)

56. The above numbered paragraphs are hereby incorporated by reference.

57. Through its sale and lease of Units to consumers, Defendant is engaged in the sale of consumer goods and all transactions were in or affecting commerce.

58. By indicating verbally and in writing that Ryder would maintain and service the Vehicles, Defendant made false representations of fact to Plaintiff, which materially deceived Plaintiff.

59. By intentionally and purposefully refusing to replace tires when the Defendant knew or should have known that the tires were a hazard and at a tread depth below NCDOT regulations.

60. By intentionally attempting to bill/invoice the Plaintiff for Vehicles which Plaintiff had properly returned to the Defendant.

61. In other ways as indicated by the preceding paragraphs, and which may be proven through the discovery of this matter.

62. As a direct and proximate result of Ryder's false representations, JML has been damaged, in excess of $75,000.00

WHEREFORE, the Plaintiff prays unto the Court for the following relief:

1. That the Plaintiff have and recover a sum for compensatory and/or treble damages in excess of $75,000.00.

2. That the Plaintiff have and recover reasonable attorney's fees if such is allowed by law.

3. That the costs of this action be taxed against the Defendant.

4. That all issues so triable be tried before a jury.

5. For such other and further relief as the Court may deem just and proper.

This the 24th day of November, 2020

/s/ F. William DeVore, IV
Brittany N. Conner, State Bar No. 53913
F. William DeVore, IV, State Bar No. 39633
Attorneys for Plaintiff
DEVORE, ACTON and STAFFORD, P.A.
438 Queens Road
Charlotte, NC 28207
Tel: 704-377-5242
Fax: 704-332-2825
bconner@devact.com
wdevore@devact.com